J. Richard Barnes, C.L.U. Commissioner of Insurance 106 State Office Building 201 E. Colfax Denver, CO 80203
Dear Commissioner Barnes:
This opinion letter is in response to your January 25, 1980 letter, in which you inquired about the trust requirements imposed by the Colorado preneed law.
QUESTIONS PRESENTED AND CONCLUSIONS
Your request for an attorney general's opinion presents two questions:
1. Whether funds received for goods and services sold under a "contract" as defined in C.R.S. 1973, 10-15-102(3)(a) must be trusted pursuant to the requirements set forth in C.R.S. 1973,10-15-103?
 My conclusion is "yes." It is my opinion that the provisions of the Colorado preneed statute require that 85 percent of all funds received by a contract seller for funeral, interment, entombment, or cremation goods and services to be delivered in the future, or for use in the future, must be deposited with a trustee in compliance with section 10-15-103.
2. If the answer to (1) above is "yes," whether those funds are exempt from the trust requirements if the goods are manufactured, specific and identifiable, and the buyer has a vested interest therein upon receipt of the funds or within 45 days thereafter?
 My conclusion is "no." As indicated, the provisions of the preneed law require that 85 percent of all funds received for goods purchased under a "contract" must be trusted if the goods are to be delivered or provided in the future. The fact that the funds are received for goods manufactured at the time of sale or shortly thereafter does not by itself exempt the funds from the trust requirements of the statute.
ANALYSIS
The purpose and scope of the preneed law is set forth in the legislative declaration of the Act. That section provides that:
 10-15-101. Legislative declaration. It is declared that the business of selling contracts or agreements whereby the seller agrees to provide funeral, interment, entombment, or cremation goods or services in the future or for future use is affected with a public interest, and the preservation of the safety and welfare of the public from unconscionable dealing requires regulation of the sale of such contracts and of the disposition of funds obtained as a result of such sales.
The statutory implementation of this purpose begins with the definition of the term "contract" found in 10-15-102(3):
 (3)(a) "Contract" means any contract, agreement, mutual understanding, series or combination of contracts, agreements, mutual understandings, and any security or other instrument which is convertible into a contract, agreement, or mutual understanding, whereby it is agreed that upon the death of any person a final resting place, personal property, or services of any nature shall be provided, delivered, or performed in connection with the preparation or cremation of such person's body for final disposition or in connection with the interment, entombment, or other final disposition of such person's remains or in connection with the memorializing or marking of the decedent, the decedent's remains, or the final resting place of such remains; but this term does not include policies of life insurance payable in money which are subject to regulation under other laws of this state, nor does it include a sale by the owner of a cemetery lot, plot, grave space, niche, or crypt if, upon receipt of full payment therefor, the purchaser acquires a conveyance of and a vested interest in an existing, specific, and identifiable lot, plot, grave space, niche, or crypt.
The above statutory definition of a contract is broad. Theform of the contract is virtually unlimited: it may be verbal or written; it may be a single agreement or a series of agreements; it may be any instrument which is convertible into a "contract." The substantive scope of the term is also broad. An agreement is a "contract" within the meaning of this section if it promises that a final resting place, personal property or services of any nature shall be delivered, provided or performed in connection with the future disposition of the decedent, the decedent's remains or final resting place of such remains. The definition contains two specific exemptions: life insurance policies payable in money and existing, specific and identifiable cemetery goods (the latter are regulated under C.R.S. 1973,12-12-101 et seq).
These "contracts" are the focal point of the statute. All other terms having legal significance in the preneed law are defined through their relationship to the "contract." For example, the trust requirements set forth in C.R.S. 1973, 10-15-103 require that:
 Not less than eighty-five percent of all funds received by the contract seller shall be deposited with a trustee within forty-five days after receipt thereof by a contract seller. Such funds shall be deposited under the terms of a trust agreement or under escrow instructions. In the event such funds are deposited under the terms of a trust agreement, such funds shall be held in trust by the trustee pursuant to the provisions of this article. In the event such funds are deposited under the terms of escrow instructions, such instructions may specify investment only under the limitations of section 10-15-104 and in all other respects shall comply with the provisions of this article. Copies of all trust instruments and escrow instructions affecting such trust funds shall be filed with the commissioner as a public record. The contract seller, at the time of each deposit of funds with a trustee, shall make a record of the name of each contract buyer and the amount of the payment made by the contract buyer for which deposit is then being made and shall keep such record, as to each contract buyer, until one year after the death of the decedent.
The trust requirements of the above section operate on the funds received by a "contract seller" who is defined in C.R.S. 1973,10-15-102(5) as "any person who engages in the business of selling contracts." (emphasis supplied).
Thus, in analyzing whether particular funds must be trusted under the preneed law, the sole inquiry is whether the funds are received pursuant to a "contract." If they are, the funds must be deposited with a trustee.
You secondly ask whether funds received by a contract seller for goods which are existing specific and identifiable at the time of sale or shortly thereafter, are subject to the trust requirements under section 10-15-103. Specifically, you identified the goods at issue as markers, memorials, and vaults manufactured within 45 days of receipt of the funds.
As indicated, the scope of the preneed statute is broad both in the language of the legislative declaration and in the language defining a contract. There are only two categories of property and services exempted from the definition: life insurance and cemetery property; specifically lots, plots, grave spaces, niches or crypts. Markers, memorials, and vaults are items of personal property within the contemplation of 10-15-102(3)(a). They do not come within either of the above two exceptions. Therefore, if the markers, memorials, or vaults are to be delivered or provided in the future or for future use, the funds received for these goods must be deposited with the trustee. This is true whether the goods are manufactured at the time of purchase or at future time of need.
Finally, you refer in your opinion request letter to a attorney general opinion of June 10, 1970, in which there is language indicating that funds received by a contract seller for memorial tablet or stone must be maintained in trust only until "title to the memorial is delivered to the contract's seller as a specific, identifiable property."
I point out to you that the specific question addressed in that opinion letter was narrow. The question posed was:
 Does the sale of a memorial, as a portion of a preneed funeral contract, require the deposit in trust of eighty-five per cent of the amount received in payment for the memorial prior to the time the memorial is manufactured and delivered to, or stored on behalf of, the contract purchaser?
The answer to the above question was "yes."
I agree with that conclusion. However, my opinion of this date specifically supersedes any language in the June 10, 1970 opinion which goes beyond the question asked and implies that funds received by a contract seller need not be maintained in trust if the memorial is manufactured and delivered to or stored on behalf of the contract purchaser.
SUMMARY
To briefly summarize my opinion, 85 percent of all funds received by a seller under a "contract" must be deposited with a trustee if the goods, whether or not presently manufactured and identifiable, are to be delivered or provided in the future or for future use.
Very truly yours,
 J.D. MacFARLANE Attorney General
CONTRACTS
FUNERALS
TRUST FUNDS
STATUTORY CONSTRUCTION
STATUTES
C.R.S. 1973, 10-15-102(3)(a)
C.R.S. 1973, 10-15-103
REGULATORY AGENCIES, DEPT.
Insurance, Div. of
Under Colorado law, 85 percent of all funds received by a preneed contract seller for funeral, interment, entombment or cremation goods and services to be delivered in the future, or for use in the future must be deposited in a trust account.